IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ALEXANDRA CHAPARRO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TEXAS ROADHOUSE, INC., and ROADHOUSE ENTERPRISES, INC.,<br><br>Defendants. | CIVIL ACTION NO: 2:17-cv-73 |

## COMPLAINT – COLLECTIVE ACTION

Plaintiff Alexandra Chaparro, on behalf of herself and all others similarly situated, through undersigned counsel alleges as follows:

### I.     INTRODUCTION

1.     This lawsuit arises under the Fair Labor Standards Act ("FLSA") as a result of Defendants' failure to pay Plaintiff and other similarly-situated employees all earned wages, including straight time wages, minimum wages, and overtime wages.

2.     Specifically, Defendants violated the FLSA with respect to employees earning a direct cash wage of less than the minimum wage by (a) requiring them to purchase and pay to clean uniforms, aprons, and other work-related items; (b) requiring them to surrender a portion of their tips in excess of those contributed to a mandatory tip pool; (c) altering timekeeping records in order to reflect fewer hours, including overtime hours, than were actually worked; (d) requiring and/or permitting them to perform work off-the-clock; and (e) requiring them to spend

more than twenty percent (20%) of their time engaged in non-tip producing activities without paying minimum wage for such time.

## II. PARTIES

3. Plaintiff Alexandra Chaparro is a resident of Amarillo, Texas. Ms. Chaparro was employed as a server at the Texas Roadhouse location in Amarillo, Texas during the statutory period covered by this Complaint. Ms. Chaparro's written consent to this action is attached as Exhibit "A."

4. Opt-in Plaintiff Tiffanie Lucero is a resident of Lubbock, Texas. Ms. Lucero was employed as a server at the Texas Roadhouse location in Amarillo, Texas during the statutory period covered by this Complaint. Ms. Lucero's written consent to this action is attached as Exhibit "B."

5. Defendant Texas Roadhouse, Inc. is a foreign for-profit corporation Service of process may be had on Defendant through its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 76701-3218 or wherever it may be found.

6. Defendant Roadhouse Enterprises, Inc. is a foreign for-profit corporation Service of process may be had on Defendant through its registered agent Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 76701-3218 or wherever it may be found.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

8. Venue is proper in the Northern District of Texas because Defendant engages in business here.

## IV. COVERAGE

9. Each Defendant's gross volume of sales exceeds $500,000 per year, exclusive of excise taxes.

10. During the relevant time period, each Defendant has been an employer engaged in commerce within the meaning of the FLSA.

11. At all times relevant to this lawsuit, Defendants employed, and continue to employ, two or more employees.

12. At all times relevant to this lawsuit, Defendants employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked with goods or materials that have been moved in or produced for commerce by any person.

## V. PROPOSED CLASS DEFINITION

13. Plaintiff brings this suit on behalf of the following similarly situated persons:

> **All current and former tipped employees who worked at any Texas Roadhouse restaurant owned, managed, or operated by any Defendant within the state of Texas at any time during the last three years who were paid a direct cash wage of less than the minimum wage (the "Potential Class Members").**

## VI. FACTUAL ALLEGATIONS

14. Defendants own, operate, or manage 517 casual dining restaurants in 49 states and six foreign countries.

15. As of December 27, 2016, Defendants owned and operated 431 restaurants and franchised an additional 86 restaurants.

16. Defendants own 61 restaurants in Texas, with an additional 6 as franchises.

17. Defendants consider their restaurants and franchising operations as similar and have aggregated them into a single reportable segment for purposes of annual reporting to the U.S. Securities and Exchange Commission.

18. The majority of Defendants' restaurants in the United States provide similar products to similar customers and have similar pricing structures.

19. Defendants compensate their restaurant managers a base salary plus a bonus as a percentage of each restaurant's pre-tax income.

20. Defendants employ a team of service coaches whose function is to provide consistent, hands-on training and education to managers and service staff for the purpose of reinforcing service quality and consistency, staff attitude, team work and managing interaction in the dining room.

21. Each of Defendants restaurants is generally staffed with one managing partner, one kitchen manager, one service manager and one or more additional assistant managers.

22. Managing partners are single restaurant operators who have primary responsibility for the day-to-day operations of the entire restaurant.

23. All managers are responsible for maintaining their standards of quality and performance.

24. Defendants use market partners to oversee the operation of their restaurants.

25. Generally, each market partner may oversee as many as 10 to 15 managing partners and their respective management teams.

26. Through regular visits to the restaurants, the market partners facilitate

adherence to all aspects of their concepts, strategies and standards of quality.

27. To further facilitate adherence to their standards of quality and to maximize uniform execution throughout the system, Defendants employ product coaches and service coaches who regularly visit the restaurants to assist in training of both new and existing employees and to grade food and service quality.

28. All restaurant employees are required to complete varying degrees of training before and during employment.

29. The comprehensive training program emphasizes Defendants' operating strategy, procedures and standards and is conducted individually at the restaurants and in groups in Louisville, Kentucky.

30. Formal employee training begins seven days before opening and follows a uniform, comprehensive training course as directed by a service coach.

31. Defendants require Potential Class Members to purchase various items that are required to be worn or used such as tee shirts, aprons, badges, name tags, point of service swipe cards, hats, and jackets.

32. The costs of these purchases are deducted from the wages of Potential Class Members.

33. Defendants require Potential Class Members to launder or otherwise keep clean, at their own cost, the above-referenced items.

34. During the last three years, Defendants have required Potential Class Members to surrender a portion of their tips by virtue of a rounding system. If for example, an employee collected $300.51 in cash from sales during a shift, Defendants would round up to the nearest dollar and require the employee to remit $301 to Defendants, thereby requiring

the employee to forfeit $.49 in tips for the shift.

35. Defendants altered timekeeping records for employees who worked over 40 hours in a workweek so that their time, and any overtime premiums due, would be reduced.

36. Defendants required or permitted Potential Class Members to perform off-the-clock work.

37. Defendants required or permitted Potential Class Members to spend more than twenty percent (20%) of their time engaged in non-tip producing activities without paying minimum wage for such time.

38. Defendants failed to inform Potential Class Members of the provisions of §3(m) of the FLSA.

## VII. COLLECTIVE ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of the Potential Class Members as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

40. The claims under the Fair Labor Standards Act may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).

41. The collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy.

42. The damages suffered by the Potential Class Members are relatively small when compared to the expense and burden of litigation, making it virtually impossible for the Potential Class Members to individually seek redress for the wrongs done to them.

43. The total number and identities of the Potential Class Members may be determined from the records of Defendants and the Potential Class Members may easily and

quickly be notified of the pendency of this action.

44. Plaintiff is similar to the Potential Class Members because she and the Potential Class Members have suffered from similar minimum wage, off-the-clock and tip-credit violations.

45. Plaintiff's experience is typical of the experiences of the Potential Class Members.

46. Defendants' failure to pay minimum wage and their tip-credit violations result from generally applicable policies or practices and do not depend on the personal circumstances of Plaintiff or Potential Class Members.

47. Specific job titles or job duties of the Potential Class Members do not prevent collective treatment.

48. All Potential Class Members are entitled to the difference between their direct hourly wage and the applicable minimum wage for all hours worked, the full minimum wage for any off-the-clock work, and any additional overtime premiums they were denied.

49. Although the issue of damages among Potential Class Members may be individual in character, there remains a common nucleus of liability facts.

50. Defendants knew or should have known that their policies and practices relating to minimum wage, overtime, and tip pooling violate the FLSA.

51. Defendants have not made a good faith effort to comply with the FLSA.

52. Rather, Defendants have knowingly, willfully, and/or with reckless disregard, carried out, and continue to carry out their illegal practices.

## VIII. CAUSES OF ACTION

### Count 1:
### *Impermissible Deductions from Wages*

53. Plaintiff and the Potential Class Members are paid a direct cash wage (e.g., $2.13 per hour for servers) by Defendants.

54. Defendants take a credit against tips received by Plaintiff and Potential Class Members to satisfy the FLSA's requirement that all employees receive at least the minimum wage of $7.25 per hour.

55. Under the FLSA, tips are not wages. 29 U.S.C. §203(m).

56. Defendants uniformly impose upon Plaintiff and Potential Class Members a requirement that they pay for uniforms, and related items, and that they relinquish a portion of their tips as part of Defendants' rounding of cash sales receipts to the nearest dollar.

57. No portion of an employee's tips may be kicked back to the employer to cover the costs of uniforms or similar items as these are part of the costs of doing business that may not be imposed upon employees.

58. Defendants violated the FLSA because all tips received by Plaintiff and Potential Class Members were not retained by them.

### Count 2:
### *Failing to Pay for All Hours Worked*

59. The hours worked by Plaintiff and Potential Class Members were uniformly manipulated by Defendants to avoid recording all time worked.

60. Plaintiff and Potential Class Members were routinely not paid for time worked, including but not limited to overtime premiums.

61. Defendants, pursuant to a uniform policy, manually altered records of hours worked to reduce or eliminate overtime hours worked.

62. Defendants permitted and/or required Plaintiff and Potential Class Members to clock out and the end of their shifts and then continue to work and/or to wait to be released by their manager to leave the restaurant.

63. Plaintiff and Potential Class Members were sometimes required to return to the restaurant after their shift on a day off to perform maintenance, cleaning, or other tasks, but were not permitted to clock in and were not paid for that time.

64. As a result of the above practices, the timekeeping records of Defendants do not reflect the total time worked by Plaintiff or Potential Class Members.

65. Therefore, Defendant failed to keep accurate records of hours worked by Plaintiff and Potential Class Members.

## *Count 3:*
## *Dual Jobs Violation*

66. Rather than pay its tipped employees the applicable minimum wage, Defendants take a credit against tips received to satisfy their obligation to pay the minimum wage.

67. Defendants therefore paid Plaintiff and Potential Class Members at a rate less than the applicable minimum wage.

68. In addition to their tipped work, Plaintiff and Potential Class Members were required by Defendants to perform non-tipped work both during and after their shifts, including but not limited to preparatory and workplace maintenance tasks such as sorting

and/or rolling silverware, refilling sugar caddies, salt and pepper shakers, cleaning and refilling condiments, breaking down the "expo" station, breaking down and cleaning drink dispensers, cleaning booths, booth ledges, chair seats, blinds, windows, and walls, sweeping and/or mopping, and throwing out trash (collectively "Side Work").

69. The Side Work which Plaintiff and Potential Class Members were required to perform exceeded twenty percent (20%) of their time at work.

70. As a result, Plaintiff and Potential Class Members are entitled to at least the applicable minimum wage for all such time worked, without applying a tip credit.

71. Furthermore, Plaintiff and Potential Class Members who worked in excess of forty hours per week are entitled to receive overtime compensation, without applying a tip credit.

72. The United States Department of Labor's Fact Sheet #15 provides that "the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13)."

73. According to the regulations promulgated by the Department of Labor, "tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

74. Although at this stage Plaintiff is unable to state the exact amount owed to the Plaintiff and the Potential Class Members, Plaintiff believes that such information will become available during the course of discovery.

75. However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.

## Count 4:
## *Failure to Inform*

76. Defendants failed to inform Potential Class Members of the provisions of §3(m) of the FLSA.

### IX. JURY DEMAND

77. Plaintiff demands a trial by jury of this action.

### X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and/or on behalf of herself and all other similarly situated, requests that this Court grant the following relief against Defendants:

A. Designation of this action as a collective action on behalf of the Potential Class Members, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents pursuant to 29 U.S.C. §216(b);

B. An award of compensation for unpaid wages to Plaintiff and each opt-in plaintiff;

C. An award of unpaid compensation for overtime to Plaintiff and each opt-in plaintiff;

D. An award of compensation for unpaid minimum wages at the applicable minimum wage rate to Plaintiff and each opt-in plaintiff;

E. An award of liquidated damages to Plaintiff and each opt-in plaintiff;

F. An award of prejudgment and post- judgment interest to Plaintiff and each opt-in plaintiff;

G.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and each opt-in plaintiff; and

H.  Such other and further relief as this Court deems just and proper.

DATED:  April 25, 2017.

Respectfully submitted,

By: */s/ Jeremi K. Young*
Jeremi K. Young
State Bar No. 24013793
Collin Wynne
State Bar No. 24068815
YOUNG & NEWSOM, PC
1001 S. Harrison, Suite 200
Amarillo, Texas  79101
(806) 331-1800
(806) 398-9095 (fax)
jyoung@youngfirm.com
collin@youngfirm.com

ATTORNEYS FOR PLAINTIFF